IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02155-RBJ-KLM

MINH PHAM,

      Plaintiff,

v.

MICHAEL AHRENS, Officer, in his official and individual capacity, and
GLENN MAHR, Officer, in his official and individual capacity

      Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendants' Motion for Summary Judgment**

[#43][1] (the "Motion").  On September 12, 2013, Plaintiff filed a Response [#47].[2]  On

October 7, 2013, Defendants filed a Reply [#60].  Pursuant to 28 U.S.C. § 636(b) and

D.C.COLO.LCivR 72.1C.3, the Motion is referred to this Court for recommendation [#46].

The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the

applicable law and is sufficiently advised in the premises.  For the reasons set forth below,

the Court respectfully **recommends** that the Motion [#43] be **granted**.

---

[1]  "[#43]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this Recommendation.

[2]  Plaintiff's Response is titled "Plaintiff's Motion to Strike Defendants' Motion for Summary Judgment."  Pursuant to D.C.COLO.LcivR 7.1 C, "[a] motion shall not be included in a response or reply to the original motion."  Accordingly, the Court treats the Response as a Response to the instant Motion.

## I.  Summary of the Case

Plaintiff, who proceeds *pro se* in this matter, initiated the instant action on August 15, 2012.  *See generally Complaint* [#2].  At the direction of the Court, on September 19, 2012, Plaintiff filed an Amended Complaint seeking money damages pursuant to 42 U.S.C. § 1983, and other statutory authority.[3]  *See Amended Complaint* [#6] at 2.  On November 8, 2012, the Court entered an Order dismissing Plaintiff's claims against certain former defendants pursuant to 28 U.S.C. § 1915.  *See Order* [#10] at 4.  The remaining claims asserted in the Amended Complaint are: unlawful seizure and detention causing injuries, unlawful search, and excessive force.  *See Amended Complaint* [#6] at 4-7.  The first and third claims combine to allege that during the course of an unlawful seizure and detention on August 18, 2010, Defendants caused pain and injuries to Plaintiff's shoulder, ligaments, tendons, and skin by applying handcuffs that were too tight and requiring him to sit in a police car for at least ninety minutes to punish him for a dirty house and minimal child care and because he refused to answer their questions.  *Id.*  Claim two alleges that the officers conducted an unlawful search of his home storage shed without a warrant or probable cause.  *Id.* at 6-7.

## II.  Undisputed Material Facts

In their Motion, Defendants offer a Statement of Undisputed Material Facts, along with various exhibits.  *Motion* [#43] at 2-7.  Plaintiff offers his own Statement of Undisputed Material Facts which, in part, tracks the facts offered by Defendants.  *Response* [#47] at

---

[3]  In his Amended Complaint, Plaintiff states that the Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 1357, 28 U.S.C. § 1367, and 42 U.S.C. § 1983.  *Amended Complaint* [#6] at 2.  The only one of these statutes on which Plaintiff's substantive claims may be premised is 42 U.S.C. § 1983.

2-6.  In their Reply, Defendants attempt to reconcile the facts offered by the parties, noting

which information is truly undisputed and distinguishing information Defendants deem

immaterial to the allegations in the case.   *Reply* [#60] at 3-6.   The Court has carefully

reviewed the pleadings and exhibits, including the conventionally submitted materials,[4]

offered by the parties and finds that the following are undisputed material facts:

1.     On August 18, 2010, the Denver Department of Human Services ("DDHS") called
       the police to request that a welfare check[5] be conducted on Plaintiff's home after
       they received a report from an insurance adjuster who had been inside Plaintiff's
       home.  *Motion* [#43] at 2; *Response* [#47] at 2.

2.     On August 18, 2010, Defendants Ahrens and Mahr went to Plaintiff's house, 3120
       West Ford Place, Denver, Colorado 80219, to conduct the welfare check.  *Motion*
       [#43] at 2; *Response* [#47] at 2.

3.     Defendants knocked on Plaintiff's door and Plaintiff opened the door and let them
       in.  *Motion* [#43] at 3; *Amended Complaint* [#6] at 2; *Pham Depo.* [#43-2] at 25:3-6,
       53:11-13, 69:13; *see also Response* [#47] at 9 ("Officers Ahrens and Mahr just
       asked for my permission to check out my sons in my living room.").

4.     Defendants informed Plaintiff that they were at his home to check on his children.
       *Motion* [#43] at 3; *Ahrens Decl.* [#43-6] at ¶ 7; *Mahr Deci.* [#62] at ¶ 6; *Response*
       [#47] at 9.

5.     Inside Plaintiff's house Defendants saw Plaintiff's two children, who were 18-19
       months old and 4 years old.  *Motion* [#43] at 2; *Response* [#47] at 2; *Pham Depo.*
       [#43-2] at 18:22-23.

6.     Defendant Mahr walked around the entire house to observe the living conditions and
       to see if there were other people present.  *Motion* [#43] at 3; *Mahr Depo.* [#43-4] at
       13:18-21; *Response* [#47] at 2-3 ("he went on to look in my entire property").

---

[4]     Plaintiff submitted deposition transcripts, photographs, and various documents
conventionally to the Court along with his Response.  *See Docket Nos.* 48, 49.

[5]     "Welfare check" is the terminology used by the parties to describe the investigation
conducted by Defendants.  This appears to refer to the investigation mandated by C.R.S. § 19-3-
308 when "any report of a known or suspected incident of intrafamilial abuse or neglect" is reported.
See *Declaration of Michael Ahrens* ("Ahrens Decl.") [#43-6] at ¶ 4; *Declaration of Glen Mahr* ("Mahr
Decl.") [#62] at ¶ 4; *Declaration of Les Tucker* ("Tucker Decl.") [#43-9] at ¶ 4.

7. Plaintiff's house was unsanitary, dirty, and had broken tiles in the kitchen and bathroom. *Pham Depo.* [#43-2] at 56:17-60:17, 62:9-19, 68:5-70:3; *Motion* [#43] at 3.

8. Defendants left Plaintiff's house to retrieve a camera and to call the DDHS to report their observations of Plaintiff's house. *Motion* [#43] at 3; *Ahrens Depo.* [#43-3] at 24:17-20.

9. Defendants relayed the information they obtained regarding the condition of Plaintiff's house to a caseworker on the telephone. *Mahr Depo.* [#43-4] at 19:2-6; *Motion* [#43] at 4.

10. When Defendants returned to Plaintiff's home, he was attempting to clean the house. *Motion* [#43] at 4; *Pham Depo.* [#43-2] at 28:3-10.

11. Plaintiff refused to answer questions about his wife. *Motion* [#43] at 6; *Pham Depo.* [#43-2] 33:12-16.

12. While Defendants spoke to him about the condition of his home, Plaintiff told them a shoulder injury prevented him from cleaning his house. *Motion* [#43] at 5; *Response* [#47] at 4; *Pham Depo.* [#43-2] at 30:4-11; 48:21-49:50:10.

13. Officer Les Tucker ("Tucker") arrived at Plaintiff's house at approximately 5:30 p.m. *Tucker Decl.* [#43-9] at ¶ 4; *Event Detail Report* [#43-5] at 1.

14. Plaintiff was handcuffed and escorted outside to sit in Officer Tucker's ("Tucker") police car. *Motion* [#43] at 4; *Response* [47] at 1, 3; *Pham Depo.* [#43-2] 39:18-42:10; *Tucker Decl.* [#43-9] at ¶ 6; *Ahrens Depo.* [#43-3] at 25:1-3.

15. Plaintiff was placed in the back of Officer Tucker's car. *Tucker Decl.* [#43-9] at ¶ 6; *Response* [#47] at 1; *Pham. Decl.* [#47-1] at ¶ 6. Officer Tucker was in the police car when Plaintiff was placed in Officer Tucker's police car. *Tucker Decl.* [#43-9] at ¶ 6; *Pham. Decl.* [#47-1] at ¶ 6. Plaintiff remained in Officer Tucker's car until he was released. *Tucker Decl.* [#43-9] at ¶ 8. Officer Tucker left the scene at approximately 6:30 p.m. *Id.* at ¶ 9; *Event Detail Report* [#43-5] at 1.

16. Defendants did not push, kick, or hit Plaintiff. *Motion* [#43] at 1; *Pham Depo.* [#43-2] at 42:18-21; 50:11-18.

17. Plaintiff was involved in several auto accidents prior to August 2010 in which he injured his right shoulder and wrist. *Motion* [#43] at 5; *Response* [#47] at 4; *Pham Depo.* [#43-2] at 95:18-96:1, 101:10-117:12.

18. Based on their observations of the house, Defendants believed that the report of suspected intrafamilial abuse or neglect, which they were investigating pursuant to

C.R.S. § 19-3-308, was well-founded and they took photographs of the house to document the conditions. *Mahr Depo.* [#43-4] at 51:19-53:2; *Ahrens Decl.* [#43-6] at ¶ 11.

19.    Plaintiff agreed with Defendants' assessment that the condition of his house was dangerous for his children. *Pham Depo.* [#43-2] at 62:9-16, 68:5-8, 69:20-70:3; *Response* [#47] at 4.

20.    Plaintiff also agreed that Defendants had a right to take photographs of any part of his house in which his children lived. *Pham Depo.* [#43-2] at 69:20-70:3, 149:2-7.

21.    A social worker, Claudia Rendon ("Rendon"), arrived at Plaintiff's house while Defendants were conducting their investigation. *Motion* [#43] at 6; *Response* [#47] at 5; *Ahrens Depo.* [#43-3] at 47:22-23.

22.    After the child neglect investigation was complete, Plaintiff's children were placed in protective custody. *Ahrens Decl.* [#43-6] at ¶ 14; *Mahr Decl.* [#43-7] at ¶ 15.

### III.  The Motion

In the Motion, Defendants argue that they are entitled to summary judgment on each of Plaintiff's claims because they have asserted qualified immunity and Plaintiff has failed to meet the burden of establishing that Defendants' actions violated a clearly established constitutional right. *Motion* [#43] 8-22.    Regarding Plaintiff's unlawful search claim, Defendants argue that Plaintiff consented to their entry of his home. *Id.* at 9-11. Defendants also argue that the search was authorized under the Colorado Children's Code, C.R.S. § 19-3-308. *Id.* at 11-12. Defendants further argue that Plaintiff's unlawful seizure claim fails because Defendants had probable cause to believe that Plaintiff committed child abuse as defined in C.R.S. § 18-6-401 and endangered his children's lives and/or health in violation of D.R.M.C. § 34-46. *Id.* at 13-16. Finally, with regard to Plaintiff's excessive force claim, Defendants contend that the force used when handcuffing Plaintiff was reasonable and that Plaintiff cannot show that he was injured as a result of the handcuffing. *Id.* at 16-22.

In his Response, Plaintiff argues that Defendants are not entitled to qualified immunity regarding the unlawful search claim because they did not have Plaintiff's consent to enter his home and their search was unreasonable.   *Response* [#47] at 9-10. Specifically, Plaintiff alleges that the search should not have gone beyond the living room because that is where his children were located and the doors to his study and shed were closed.   *Id.* at 10.   Plaintiff also contends that Defendants are not entitled to qualified immunity regarding his unlawful seizure claim because they did not follow proper procedures when handcuffing him and they did not have probable cause to believe that he had committed any offense.   *Id.* at 10-12.   Regarding his excessive force claim, Plaintiff argues that Defendant Mahr is not entitled to qualified immunity because the amount of force he used when handcuffing Plaintiff was unreasonable.   *Id.* at 12.

Plaintiff also alleges that he asserted another claim in his Amended Complaint.   *Id.* at 12.   Plaintiff titles this portion of his Response "Fifth claim for relief: any appropriate relief from the court for failure to provide care, failure to train."   *Id.*   Plaintiff states that, "After discovery, Plaintiff found more claims" and "Plaintiff would like to add more claims such as unlawful detention, failure to provide care and failure to train."   *Id.*   Further, Plaintiff attempts to assert a new unlawful detention claim and failure to provide care claim against Officer Tucker, who is not a defendant in this case.   *Id.* at 13.   Plaintiff also attempts to assert a failure to train claim against the City and County of Denver.   *Id.*   The City and County of Denver is not a defendant in this case.   In fact, Plaintiff named the City of Denver as a defendant in his original Complaint but those claims were dismissed pursuant to 28 U.S.C. § 1915 as legally frivolous.   *See Order* [#10] at 4.   Plaintiff's attempts to add claims and parties in his Response is improper.   The deadline for joinder of parties and

amendment of pleadings in this matter was May 29, 2013.  See *Minute Order* [#34] at 1.

In addition, Plaintiff was advised twice by the Court that he must comply with Fed. R. Civ.

P. 15 in order to amend his Amended Complaint.   *See Minute Order* [#37] at 1; *Minute Order* [#41] at 2.  After the Court's advisement, Plaintiff did not file a motion to amend and the deadline to do so has elapsed.   Accordingly, the Court will not consider Plaintiff's arguments regarding his new claims against Officer Tucker and the City and County of Denver.

In their Reply, Defendants address the various factual allegations made by Plaintiff. *Reply* [#60] at 3-6.  Defendants also argue that Plaintiff's factual assertions, without support from the record, do not satisfy his burden of showing that Defendants violated a clearly established constitutional right.  *Id.* at 7.

## IV.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law.  *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*,

477 U.S. at 323).  When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671.  If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor.  *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't. of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l., Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).   The nonmoving party's evidence must be more than "mere reargument of [the] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

When considering Plaintiff's filings, the Court is mindful that it must construe the filings of a pro se litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [her] behalf."  *Whitney v.*

*New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, Plaintiff, as a *pro se* litigant, must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## V.  Analysis

Defendants assert qualified immunity as to all of Plaintiff's claims.  Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity also offers protection from trial and other burdens of litigation.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"[B]ecause qualified immunity is designed to protect public officials from spending inordinate time and money defending erroneous suits at trial," the Court reviews summary judgment motions involving a qualified immunity defense "somewhat differently " from other motions for summary judgment.  *Clark v. Edmunds*, 513 F.3d 1219, 1221 (10th Cir. 2008) (internal citations omitted).  When defendants assert a qualified immunity defense in a summary judgment motion, "[t]he threshold inquiry is whether the . . . evidenced facts . . . taken in the light most favorable to the plaintiff show a constitutional violation."  *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  The Court must also consider whether Plaintiff has shown that "the constitutional right was clearly established at the time of the alleged unlawful activity."  *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

In order for Plaintiff's claims "to survive summary judgment, the record must contain

facts that rebut the presumption of [Defendants'] immunity from suit." *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001) (discussing special nature of qualified immunity defense); *see Rounds v. Corbin*, No. 04-cv-02532-CMA-KMT, 2009 WL 2982006, at *2-3 (D. Colo. Sept. 11, 2009) (denying summary judgment motion on qualified immunity where the plaintiff "submitted more than unsupported allegations" to support his claim); *Kelley v. City of Albuquerque*, 375 F. Supp. 2d 1183, 1203 n.7 (D.N.M. 2004) (citing *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)) (noting that to overcome the defendant's motion for summary judgment on basis of qualified immunity, the "plaintiff must do more than rest on [his] own speculation or pleadings"); *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 593 (10th Cir. 1999) (denying summary judgment on qualified immunity where the "[t]he record supports the allegation that the plaintiffs' Fourth Amendment rights were violated"); *Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991) (noting that when "a government official raises the defense of qualified immunity in a motion for summary judgment, the plaintiff must produce facts sufficient to show both that the defendant's alleged conduct violated the law and that [the] law was clearly established when the alleged violation occurred").

Plaintiff bears the burden of proving that Defendants' actions violated clearly established law. *Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994). *See Saucier*, 533 at 201 ("[W]hether the right was clearly established . . . must be undertaken in light of the specific context of the case, not as a broad general proposition."). "[T]he right the official is alleged to have violated must have been 'clearly established' in a particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right." *Id.* at 202

10

(citation omitted).  "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [official] conduct . . . .  If the officer's mistake as to what the law requires is reasonable, the officer is entitled to the immunity defense."  *Saucier*, 533 U.S. at 205.  After all, "qualified immunity precludes the imposition of liability for 'all but the plainly incompetent or those who knowingly violate the law.'"  *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) (citation omitted).

It is no longer mandatory that the Court first consider whether Plaintiff has demonstrated a constitutional violation by Defendants; using its discretion, the Court may move immediately to an analysis of whether the right at issue was clearly established at the time of the alleged violation.  *Pearson*, 555 U.S. at 236.  In this matter, it is appropriate to first address whether Plaintiff has demonstrated that Defendants violated his constitutional rights.

## A.    Unlawful Search Claim

The Fourth Amendment protects against unreasonable searches.  U.S. Const. amend. IV.  Searches inside a home "without a warrant are presumptively unreasonable."  *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)).  Accordingly, a warrantless search inside a home by a law enforcement officer violates the Fourth Amendment unless an exception to the warrant requirement applies.  *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006).  "It is [ ] well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

Here, it is undisputed that Plaintiff gave Defendants consent to enter his home. *Motion* [#43] at 3; *Amended Complaint* [#6] at 2; *Pham Depo.* [#43-2] at 25:3-6, 53:11-13, 69:13; *see also Response* [#47] at 9 ("Officers Ahrens and Mahr just asked for my permission to check out my sons in my living room.").   Therefore, Defendants did not violate the Fourth Amendment by entering Plaintiff's home.   Once inside Plaintiff's home, it is undisputed that Defendants observed the dangerous condition of Plaintiff's home. *Pham Depo.* [#43-2] at 56:17-60:17, 62:9-19, 68:5-70:3; *Motion* [#43] at 3.   However, Plaintiff disputes Defendants' right to open his shed in his backyard.[6]  *Amended Complaint* [#6] at 3-4; Response [#47] at 5; *Pham Depo.* [#43-2] at 70:6-22 (arguing that Defendants should not have examined the shortage shed because Plaintiff's children did not play in the backyard).

The Fourth Amendment "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails."   *See Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008) (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559.   Here, Defendants' search of the storage shed in Plaintiff's backyard was

---

[6]  At times, Plaintiff also appears to dispute Defendants' right to look in his bathroom and his study room.  However, at other times, Plaintiff admits that his children did go into the bathroom and that Defendants had a right to investigate that room.  *See Response* [#47] at 5 ("My sons did not live in the study room or storage shed."); *Pham Depo.* [#43-2] at 69:16-19 (stating that Defendants should not have looked at Plaintiff's bathroom), 69:23-70:3 (stating that Defendants were allowed to take photographs of Plaintiff's bathroom because his children "have had to go to the bathroom" and then arguing that Defendant should not have investigated Plaintiff's bathroom). The only clear allegation Plaintiff makes with regard to the areas he believes Defendants were not authorized to search is the storage shed.  Accordingly, the Court focuses its analysis on the storage shed.

authorized by Colorado law.   Title 19 of the Colorado Revised Statutes, the Colorado

Children's Code, provides that when a report is made of intrafamilial abuse or neglect an

appropriate response is to conduct an immediate investigation to assess the situation and

determine an appropriate response to the report.   C.R.S. § 19-3-308(1)(a).    The

investigation shall include: "(a) [t]he credibility of the source or the report; (b) [t]he nature,

extent, and cause of the abuse or neglect; (c) [t]he identity of the person responsible for

such abuse or neglect; (d) [t]he names and conditions of any other children living in the

same place; (e) [t]he environment and the relationship of any children therein to the person

responsible for the suspected abuse or neglect; [and] (f) [a]ll other data deemed pertinent."

C.R.S. § 19-3-308(2).   The Children's Code further provides that "[t]he county department

shall conduct the investigation in conjunction with the local law enforcement agency…"

C.R.S. § 19-3-308(4)(a).   In this case, DDHS received a child neglect or abuse report

regarding Plaintiff's house and reported it to the police to conduct a welfare check.  *Motion*

*[#43]* at 2; *Response* *[#47]* at 2.    As a result, Defendants were dispatched to Plaintiff's

house to investigate.   *Motion* *[#43]* at 2; *Response* *[#47]* at 2.   Upon arrival at Plaintiff's

house, Defendants were given permission by Plaintiff to enter Plaintiff's home to investigate

the allegations of neglect or abuse.  *Motion* *[#43]* at 3; *Amended Complaint* *[#6]* at 2; *Pham*

*Depo.* *[#43-2]* at 25:3-6, 69:13; *see also Response* *[#47]* at 9.

       As indicated previously, it is clear that Plaintiff only contests the inclusion of the

storage shed in the search.  The Court's careful review of Plaintiff's pleadings results in the

conclusion that Plaintiff takes no issue with the manner in which the search was conducted

or the justification for initiating the search.  Regarding the scope of the search, based on

the undisputed material facts, the Court finds that Defendants' search of the entire house

13

and the storage shed was proper.   First, C.R.S. § 19-3-308(2) mandates that a child neglect investigation include an investigation into "[t]he nature, extent, and cause of the abuse or neglect" and "[t]he names and conditions of any other children living in the same place."  C.R.S.  § 19-3-308(2)(b) and (d).  Second, pursuant to C.R.S.  § 19-3-308(2)(e), Defendants were mandated to determine "[t]he environment and the relationship of any children therein to the person responsible for the suspected abuse or neglect."  C.R.S. § 19-3-308(2).  Therefore, Defendants needed to determine if any adults, other than Plaintiff, or children, other than the two they saw in the living room, were present.  However, Plaintiff refused to respond to questions regarding his wife.  *Motion* [#43] at 6; *Pham Depo.* [#33] 33:12-16.  Therefore, Defendants were justified in briefly opening the storage shed to verify that there were no children or adults inside.  Based on the undisputed material facts in this case and Defendants' statutory duties, Defendants' actions were reasonable and did not violate the Fourth Amendment.  *See Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979) (the Fourth Amendment imposes a standard of reasonableness on the exercise of discretion by law enforcement agents).  As a result, the Court finds that Plaintiff cannot meet his burden of showing that Defendants' search of his house "violated the law and that [the] law was clearly established when the alleged violation occurred."  *Bruning*, 949 F.2d at 356.

**B.   Unlawful Seizure**

Plaintiff's unlawful seizure claim is also governed by the Fourth Amendment. *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008).  As noted above, Plaintiff consented to Defendants' entry into his house.  *Motion* [#43] at 3; *Amended Complaint* [#6] at 2; *Pham Depo.* [#43-2] at 25:3-6, 53:11-13, 69:13; *see also Response* [#47] at 9 ("Officers Ahrens and Mahr just asked for my permission to check out my sons in my living

room."). Therefore, the question becomes whether Defendants had probable cause to arrest[7] him.  *See States v. Reeves*, 524 F.3d 1161, 1166 (10th Cir. 2008); *United States v. Cruz-Mendez*, 467 F.3d 1260, 1268 (10th Cir. 2006).  The Tenth Circuit has made clear that:

> Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. Probable cause does not require facts sufficient for a finding of guilt; however, it does require more than mere suspicion.  Probable cause is measured against an objective standard.  The primary concern is whether a reasonable officer would have believed that probable cause existed to arrest the defendant based on the information possessed by the arresting officer.

*Cruz-Mendez*, 467 F.3d at 1268 (quoting *United States v. Soto*, 375 F.3d 1219, 1222 (10th Cir. 2004).  Furthermore, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983).

Here, the undisputed facts are as follows: Defendants went to Plaintiff's house to conduct the welfare check.  *Motion* [#43] at 2; *Response* [#47] at 2.  Defendant Mahr walked around the entire house to observe the living conditions and to see if there were other people present.  *Motion* [#43] at 3; *Mahr Depo.* [#43-4] at 13:18-21; *Response* [#47]

---

[7]  Defendants do not waive the potential argument that their seizure of Plaintiff was an investigative detention, not an arrest.  *Motion* [#43] at 13.  "An arrest is distinguished from an investigatory stop by the involuntary, highly intrusive nature of the encounter." *Plascencia v. Taylor*, 514 F. App'x 711, 715 (unpublished decision) (quoting *Cortez*, 478 F.3d at 1115).  However, the "use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest." *Id.* (quoting *Cortez*, 487 F.3d at 1116).  The use of force, the reasonableness of such force, and the length of time the individual was in handcuffs are relevant to the determination of whether a seizure was a stop or an arrest. *Id.* at 116.  Here, the Court analyzes the seizure of Plaintiff as an arrest without determining whether the seizure was an investigative detention or an arrest because that determination is irrelevant to the constitutional inquiry.

at 2-3 ("he went on to look in my entire property").   Plaintiff's two young children were

present in the house.   *Motion* [#43] at 2; *Response* [#47] at 2; *Pham Depo.* [#43-2] at

18:22-23.   Defendants found that Plaintiff's house was unsanitary, dirty, and had broken

tiles in the kitchen and bathroom.   *Pham Depo.* [#43-2] at 56:17-60:17, 62:9-19, 68:5-70:3;

*Motion* [#43] at 3.   Based on their observations of the house, Defendants believed that the

allegation of intrafamilial abuse or neglect was well-founded and they took photographs of

the house to document the conditions.   *Mahr Depo.* [#43-4] at 51:19-53:2; *Ahrens Decl.*

[#43-6] at ¶ 11.   Plaintiff agreed with Defendants' assessment that the condition of his

house was dangerous for his children.   *Pham Depo.* [#43-2] at 62:9-16, 68:5-8, 69:20-70:3;

*Response* [#47] at 4.   Therefore, Defendants had probable cause to believe that Plaintiff

had violated state law.   *See* C.R.S. § 18-6-401(1)(a) ("A person commits child abuse if such

person . . . permits a child to be unreasonably placed in a situation that poses a threat of

injury to the child's life or health").   Accordingly, based on the undisputed material facts,

Defendants' arrest of Plaintiff did not violate the Fourth Amendment.   As a result, the Court

finds that Plaintiff cannot meet his burden of showing that Defendants' arrest of him in his

home "violated the law and that [the] law was clearly established when the alleged violation

occurred."   *Bruning,* 949 F.2d at 356.

## C.   Excessive Force Claim

Even though the Court concludes that the seizure was lawful, the Court must still

address Plaintiff's excessive force claim because, "it is necessary to consider both the

justification the officers had for the arrest and the degree of force they used to effect it."

*Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007).   "To state a claim of excessive

force under the Fourth Amendment,[8] a plaintiff must show both that a 'seizure' occurred and that the seizure was 'unreasonable.'" *Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994); *Brooks v. Gaenzle*, 614 F.3d 1213, 1219 (10th Cir. 2010).  Here, there is no question that Plaintiff was handcuffed and placed in a police car while police officers investigated his house.  *Motion* [#43] at 4; *Response* [47] at 3; *Pham Depo.* [#43-2] at 39:18-42:10.  Therefore, the question is whether the force used was reasonable.

"If the plaintiff can prove that the officers used greater force than would have been reasonably necessary to effect a lawful arrest, he is entitled to damages resulting from that excessive force." *Cortez*, 478 F.3d at 1127.  However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham,* 490 U.S. at 396 (quotation marks and citation omitted); *see Marquez v. City of Albuquerque,* 399 F.3d 1216, 1222 (10th Cir. 2005) ("[T]he Fourth Amendment does not require police [officers] to use the least intrusive means in the course of a detention, only reasonable ones.").  The Tenth Circuit has found that "in nearly every situation where an arrest is authorized, or police reasonably believe public safety requires physical restraint, handcuffing is appropriate." *Fisher v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009).  As explained above, the Court concludes that Defendants' arrest of Plaintiff was authorized.  Therefore, the inquiry becomes not whether restraining Plaintiff was reasonable but whether there is a genuine issue of material fact regarding the

---

[8]   While Plaintiff purports to bring his excessive force claim pursuant to the Eighth Amendment, that standard is only applicable to excessive force claims brought by incarcerated individuals. *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989); *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010).  Plaintiff's excessive force claim is governed by the Fourth Amendment. *Id.*; *Porro*, 624 F.3d at 1325.

reasonableness of the manner in which he was restrained.  Further, for Plaintiff to maintain his claim based on unduly tight handcuffs, in addition to proving that Defendants acted unreasonably, he must also provide evidence: (1) that he timely complained about the tight handcuffs and (2) that he suffered some "actual injury" that is not *de minimus*.  *Cortez*, 478 F.3d at 1129; *see also Silvan W. V. Briggs*, 309 F. App'x 216, 225 (10th Cir. 2009) (unpublished table decision) (noting that there was no evidence that plaintiff "suffered more than a de minimis injury or that he notified officers that his handcuffs were painful").

In the Amended Complaint, Plaintiff alleges that Defendant Mahr "twisted [Plaintiff's] hands and forearms while he applied the handcuff[s]."  *Amended Complaint* [#6] at 2. Plaintiff maintained that he told Officer Mahr that the handcuffs hurt but Officer Mahr continued to put them on and he did not "use his finger to check" that the handcuffs were not too tight.  *Id.* at 2-3.  Plaintiff alleged that several minutes later he asked Defendant Ahrens to release the handcuffs because they were too tight and Defendant Ahrens ignored Plaintiff's request.  *Id.* at 3.  Plaintiff further alleged that he again asked Defendant Ahrens to release the handcuffs because he had a "medical condition" but Defendant Ahrens ignored him.  *Id.*  Plaintiff also alleged that he "had to sit in pain in tight handcuff[s] for at least 90 minutes."  *Id.*

Where, as here, the nonmoving party bears the burden of proof at trial, Fed. R. Civ. P. 56 requires the nonmoving party to go beyond the pleadings and designate specific facts showing a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Koch v. City of Del City*, 660 F.3d 1228, 1247 (10th Cir. 2011) (finding fact that plaintiff resisted arrest undisputed because she failed to present evidence to refute that fact in response to a summary judgment motion even though she argued the fact in her

18

response).  "[I]n order to survive summary judgment, the content of the evidence that the nonmoving party points to must be *admissible*."  *Adams v. Am. Guarantee & Liability Ins.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (emphasis in original) (citations omitted).  A complaint submitted by a *pro se* litigant may be treated as an affidavit and used as evidence on summary judgment if the complaint is sworn, dated, and signed under penalty of perjury pursuant to 28 U.S.C. § 1746.  *See, e.g.*, *Chytka v. Wright Tree Serv., Inc.*, No. 11-cv-00968-REB-KLM, 2012 WL 7151207, at *1 n.3 (D. Colo. Nov. 13, 2012).  Here, although Plaintiff signed and dated his Amended Complaint [#6], he did not swear to the truth of the contents as required by 28 U.S.C. § 1746.  The Court will not treat an unsworn complaint as an affidavit for purposes of establishing factual disputes in opposition to a summary judgment motion.  *Dodson v. Bd. of Cnty. Comm'rs*, 878 F.Supp.2d 1227, 1244 n.4 (D. Colo. 2012) ("Because Plaintiff did not submit his Amended Complaint sworn under penalty of perjury, it cannot be considered as an affidavit for Rule 56 purposes."); *see also Hayes v. Marriott*, 70 F.3d 1144, 1148 (10th Cir. 1995) ("Unsworn affidavits do not raise factual issues precluding summary judgment." (citation omitted)); *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 n.1 (10th Cir. 1994) (noting that unsworn affidavits may be used in summary judgment proceedings, but only if they comply with the requirements of 28 U.S.C. § 1746 and are signed under penalty of perjury); *Sofford v. Schindler Elevator Corp.*, 954 F. Supp. 1459, 1462 (D. Colo. 1997) (holding that unsworn witness statement was not competent evidence for consideration in ruling on summary judgment motion); 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738, at 362-65, 372-74 (1998) (recognizing that affidavits which do not meet the requirements of Fed. R. Civ. P. 56(e) should not be given any probative force and are subject to being stricken).  Accordingly,

the Court does not consider Plaintiff's allegations in the Amended Complaint [#6] to be competent evidence for consideration in ruling on the Motion.

Furthermore, the Event Details Report[9] disputes Plaintiff's allegation that he was handcuffed for 90 minutes. It is undisputed that Plaintiff was handcuffed and then taken outside to wait in Officer Tucker's car. The Event Details Report shows that Officer Tucker was first assigned to the incident at 5:26 p.m. and that his involvement ended at 6:36 p.m. *Event Details Report* [#43-5] at 1. Therefore, even if Plaintiff was handcuffed and sitting in Officer Tucker's car from the moment Officer Tucker was assigned to the incident until the moment he departed, the Event Details Report establishes that the maximum length of time Plaintiff was handcuffed and detained in Officer Tucker's car was 70 minutes. Regardless, being handcuffed and detained for up to 90 minutes, alone, does not constitute excessive force. *See Silvan W. v. Briggs*, 309 F. App'x 216, 224 (10th Cir. 2009) (unpublished decision).

In support of the claims asserted in this case, Plaintiff offers a Declaration which is dated, signed, and states that the statements contained therein are "[d]eclare[d] under penalty of perjury." *See Declaration of Minh Pham* ("Pham Decl.") [#47-1] at 24. Accordingly, the Pham Declaration is competent evidence which the Court considers in ruling on the Motion. However, Plaintiff does not include information in the Pham Declaration about his alleged complaints to Defendants about the handcuffs being too tight. *Id.* The only statements in the Declaration relating to the allegedly too-tight handcuffs are

---

[9] The Event Details Report was authenticated as a business record kept in the regular course of business by the Denver Police Department by Detective Scott Murphy. *See Declaration of Detective Scott Murphy* [#43-13] at ¶ 2.

that Plaintiff complained about the handcuffs to Officer Tucker and asked Officer Tucker if he could show him his medical records, and that Plaintiff mentioned the tight handcuffs to Ms. Rendon. *Pham Decl.* [#47-1] at 23; *see also Pham Depo.* [#43-2] at 77:18-20 (regarding speaking to Ms. Rendon. Plaintiff stated, "And all she know — she want to know the condition of my house. And when I got along I complained about handcuff. She ignore me."). Neither Officer Tucker nor Ms. Rendon are defendants in this action. Plaintiff offers no evidence that he timely complained about the tight handcuffs to Defendants. *Osei v. Brooks*, 2013 WL 1151619, at *9 (D. Colo. March 19, 2013) (finding that police officers were not alerted that the handcuffs were too tight even though plaintiff made comments about the tight handcuffs because "there [wa]s no indication that any of the police officers heard the comments about the hand swelling or could have reasonably interpreted these comments to mean that the handcuffs were too tight."); *Jones v.* Cowens, 09-cv-01274-MSK-MJW, 2012 WL 3590756, at *5 (D. Colo. Aug. 19, 2012) (granting summary judgment when plaintiff complained to other officers but offered no evidence that defendant "was aware that the handcuffs were painfully tight or that they prevented [the plaintiff] from using the toilet"); *see Smith v. Kenny*, 678 F.Supp.2d 11234, 1166 (D.N.M. 2009) (granting summary judgment on claims against defendant "who did not apply the handcuffs and was never told that they were overly tight"); *see also Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (to prevail on a claim brought pursuant to § 1983, a plaintiff must establish that the defendant was personally involved in the alleged constitutional violation).

The Court has reviewed all of the evidence offered by Plaintiff and Defendants and has not found any competent evidence stating that Plaintiff complained about the allegedly

too-tight handcuffs to Defendants.[10]  The evidence shows that Plaintiff informed Defendant Mahr and Officer Tucker that he had a previous injury, but there is no evidence that he specifically told Defendants that the handcuffs were too tight.  *See Answer* [#23] at 4 ("Upon information and belief, Defendant Mahr admits that Plaintiff stated that Plaintiff had prior injuries."); *Mahr Depo.* [#49] at 50:24-51:4; 76:8-13; *Tucker Depo.* [#49] at 3:18-4:1, 10:23-25.  The only evidence that comes close to showing that Plaintiff timely complained about the tight handcuffs to Defendants is the following statement offered during his deposition: "All I end up with in the police car with tied handcuffs.  They didn't even check on me either, even when I complain."  *Pham Depo.* [#43-2] at 69:7-9.  However, this statement is vague and does not make clear to whom Plaintiff allegedly complained.  As noted above, complaining to Ms. Rendon, for example, does not establish the personal involvement of these Defendants which is required for a claim brought pursuant to § 1983. *See Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).  Accordingly, there is no genuine dispute of material fact about whether Plaintiff timely complained about the allegedly too-tight handcuffs to Defendants.  As a result, Plaintiff cannot meet his burden of providing evidence that Defendants' used excessive force in handcuffing him, thus violating a clearly established right.  *See Cortez*, 478 F.3d at 1129.

Because Plaintiff has failed to show that Defendants' conduct violated clearly established statutory or constitutional rights of which a reasonable person in their position

---

[10]   The evidence reviewed by the Court includes, but is not limited to, the complete deposition transcripts of Defendant Ahrens, Defendant Mahr, Ms. Rendon, Officer Tucker, and Michael Reichardt which were submitted by Plaintiff conventionally and noted on the docket at #49, and the portions of Plaintiff's deposition transcript [#43-2] submitted by Defendants.  A complete version of Plaintiff's deposition transcript was not submitted to the Court.

would have known, Defendants are entitled to qualified immunity on each of Plaintiff's claims. See *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Accordingly, the Court **recommends** that Defendants' Motion [#43] be **granted**.

## VI. Conclusion

IT IS RESPECTFULLY **RECOMMENDED** that Defendants' Motion [#43] be **GRANTED**, and that judgment enter in favor of Defendants and against Plaintiff as to each of Plaintiff's three claims.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: October 18, 2013

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge